1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

11   L.C.C., a minor, by and through his        Case No.:  20cv1489-KSC
     Guardians Ad Litem, LINDSAY
12   CALIHAN and CHRISTOPHER              **ORDER APPROVING MINOR'S**
     CALIHAN,                            **COMPROMISE AND MINOR'S**
13                                        **TRUST**
                          Plaintiffs,
14                                        **[Doc. Nos. 35, 36.]**
15   v.

16   UNITED STATES OF AMERICA; and
     SCRIPPS MERCY HOSPITAL, a
17   business entity,

18                          Defendants.
19
20

21

22       Before the Court is plaintiffs' *Ex Parte* Petition for Approval of a Minor's

23   Compromise and for Approval of the Minor's Trust ("Petition").  [Doc. No. 35.]  The

24   Petition is supported by counsel's Declaration and eleven exhibits, including copies of

25   the Settlement Agreements with the remaining defendants ("the proposed Settlement")

26   and the Settlement Preservation Trust instrument being created for the benefit of the

27   minor ("the proposed Trust").  [Doc. No. 35, at pp. 14-15; Doc. Nos. 35-3 to 34-6

28   (Exhibit Nos. 3-6).]   Plaintiffs also filed an Addendum to their *Ex Parte* Petition to

                                          1

advise the Court of the final amount of a Medi-Cal lien that impacts the allocation of the settlement funds.  [Doc. No. 36.]

Pursuant to Civil Local Rule 17.1(a), the petitioners seek the Court's approval of the proposed Settlement and the compromise of the minor's claims against the two remaining defendants in this action.  Petitioner also seeks to consolidate approval of the trust instrument as permitted under Local Rule 17.1(b)(3).  On July 7, 2022, the parties consented to the undersigned Magistrate Judge for all remaining proceedings, including the entry of judgment.  [Doc. No. 41.]  A final hearing on the Petition was held on October 14, 2022.  [Doc. No. 44].  Having reviewed the Petition and the supporting documents, and for the reasons set forth below, the Court finds that the Petition must be GRANTED.

### *Summary of Plaintiffs' Claims*

The minor plaintiff, L.C.C., was born at Scripps Mercy Hospital in San Diego, California, on September 24, 2017.  Plaintiffs allege that a breach of the standard of care and a delay in performing a Caesarean section caused L.C.C. to suffer a prolonged lack of oxygen to his brain which resulted in neurological injuries.  [Doc. No. 1, at pp. 4-6; Doc. No. 35, at p. 3.]  L.C.C. was diagnosed with cerebral palsy and left upper and lower extremity hypo- and hyper-tonia.  [Doc. No. 35, at p. 3.]

### *Procedural History*

On July 31, 2020, plaintiff L.C.C., through his parents as his guardians *ad litem*, filed suit for medical negligence against the United States, Scripps Health, and Scripps Mercy Hospital.  [Doc. No. 1.]  According to the Complaint, the Court's jurisdiction is based on 28 U.S.C. § 2671, *et seq.* (*i.e.*, the Federal Tort Claims Act ("FTCA")) and 28 U.S.C. § 1346(b)(1), because the United States is a defendant.  [Doc. No. 1, at p. 3.]  With respect to tort claims, the FTCA provides that the United States "shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances. . . ." 28 U.S.C. § 2674.  The FTCA also includes a specific choice of law provision stating that liability is determined "in accordance with the law of the place where the act or omission

occurred." 28 U.S.C. § 1346(b)(1).  However, the Court notes that "issues not affecting the government's substantive liability are determined solely by federal law; at most, state law provides only an interpretive guide to the outcome of these issues."  *Jackson v. U.S.*, 881 F.2d 707, 712 (9th Cir. 1989).

Fact discovery in the case commenced on or about December 22, 2020 [Doc. No. 13] and was essentially complete as of October 8, 2021.  [Doc. Nos. 28, p. 2.]  Expert discovery commenced thereafter and was scheduled to be completed as of April 27, 2022. [Doc. No. 28, at p. 3.]  However, on January 5, 2022, the parties filed a Notice of Settlement.  [Doc. No. 32.]  During the discovery period, plaintiff L.C.C. was evaluated by "multiple experts" retained by the defendants.  [Doc. No. 35, at p. 4.]

## ***Discussion***

### A.     ***The Proposed Settlement***.

"It has long been established that the court in which a minor's claims are being litigated has a duty to protect the minor's interests."  *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983).  Where the parties settle an action involving a minor litigant, the Court must "'conduct its own inquiry to determine whether the settlement serves the best interest of the minor.'"  *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)).  The Court must conduct this inquiry "even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem."  *Salmeron*, 724 F.2d at 1363.

In this regard, Civil Local Rule 17.1(a) states as follows:  "No action by or on behalf of a minor or incompetent, or in which a minor or incompetent has an interest, will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment. All settlements and compromises must be reviewed by a magistrate judge before any order of approval will issue….]"  CivLR 17.1(a).

In cases such as this, which involve "the settlement of a minor's federal claims," the Ninth Circuit in *Robidoux*, 638 F.3d 1177, instructed "district courts [to] limit review to the question whether the net amount distributed to each minor plaintiff in the settlement is

fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Id.* at 1181–1182 n.2. Courts should also "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id.* at 1182. "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." *Id.*

Here, the Petition is supported by copies of two written Settlement Agreements, one between the plaintiffs and defendant United States and the other between plaintiffs and defendant Scripps Health d/b/a Scripps Mercy Hospital San Diego. [Doc. Nos. 35-3 and 35-4 (Exhibits 3 and 4).] The proposed Settlement was privately negotiated and was not reached during or as the result of a settlement conference with the Court. Under the proposed Settlement, defendants have collectively agreed to pay a total of $1,000,000, with the United States paying $600,000 and Scripps paying the remaining $400,000. Plaintiffs have already been paid by defendants and the funds are being held in trust by plaintiffs' counsel until the proposed Settlement is approved by the Court. No further approvals of the proposed Settlement are required by the Torts Branch of the United States or any other entity. [Doc. No. 35, at pp. 3-4.]

As set forth in the Petition, plaintiffs seek the Court's approval of the following allocation of the proposed $1,000,000 Settlement amount: First, the Petition allocates an amount not to exceed $65,000 to an unresolved Medi-Cal lien. [Doc. No. 36, at p. 5.] However, plaintiffs filed an Addendum to their Petition explaining that the Medi-Cal lien was resolved for $49,616.17. [Doc. No. 36, at p. 2.] Second, the Petition allocates $573,119.64 to the proposed Trust for the benefit of the minor. Pursuant to the Addendum, this allocation was increased from $573,119.64 to $588,503.47, because the Medi-Cal lien was resolved for less than $65,000. [Doc. No. 36, at p. 2; Doc. No. 35, at p. 5.] Third, the sum of $35,000 is allocated to each parent of the minor child in recognition of the "extreme hardships" they have endured and the "extraordinary care" they have provided for L.C.C.

The parents have relinquished their individual claims for emotional distress to narrow the focus of the lawsuit on recovery for their son. Fourth, attorney's fees in the amount of $250,000.00 (25% of $1,000,000) have been allocated to plaintiffs' counsel, along with $41,880.36 in litigation costs that were advanced during the lawsuit. [Doc. No. 35, at pp. 5-9.]

Despite his "serious brain injury" resulting in "developmental delays, a cerebral palsy diagnosis, and weakness/hyperflexion in his left extremities," plaintiffs report that L.C.C. has made "remarkable progress in physical and cognitive performance" due to early interventions. [Doc. No. 35, at pp. 8, 10.] Various diagnostic tests have revealed that "L.C.C. will likely enjoy intelligence and cognitive function within the normal range for non-disabled persons" and will not require feeding assistance or a wheelchair. As plaintiffs point out, "L.C.C.'s relative health and optimistic prognosis are a factor in assessing the fairness and reasonableness of this settlement." [Doc. No. 35, at p. 10.]

Based on the information presented, the proposed Settlement compensates plaintiff L.C.C. for his past injuries and anticipated future special needs and is structured to provide both flexibility and certainty going forward. As plaintiffs point out, they were able to negotiate favorable terms that significantly impact the usefulness of the funds placed in the proposed Trust for L.C.C. More specifically, the proposed Settlement "does not include a reversionary trust component, or a restrictive medical trust component," so any remainder will be available to L.C.C. "to use or invest at his age of majority." [Doc. No. 35, at pp. 10-11.]

The proposed Settlement also avoids the risks and expenses of a jury trial. As plaintiffs acknowledge, defendants would "no doubt present a compelling case at trial as to why liability and causation do not exist in this case," and L.C.C.'s recovery of actual damages could be "significantly less than the settlement amount, or nothing at all." [Doc. No. 35, at p. 10.]

Although the parties do not identify any other cases involving circumstances like those alleged in plaintiffs' Complaint, the Court has independently surveyed settlements in

California in cases involving minors who suffered brain injuries during the birth process because of purported delays in performing Caesarean deliveries. Given L.C.C.'s "relative health and optimistic prognosis" [Doc. No. 35, at p. 10], the Court finds the settlement to be within the range of amounts recovered in other cases.[1] Accordingly, upon consideration of the facts of the case, L.C.C.'s specific claims, and recoveries in similar actions, the Court concludes that the Settlement is fair and reasonable, and in L.C.C.'s best interests.

**B.**      ***Attorney's Fees.***

Civil Local Rule 17.1(b) requires that money recovered by a minor be "disbursed in accordance with California Probate Code Section 3600, *et seq.*" CivLR 17.1(b). "If the recipient of the money . . . is not a California resident," Local Rule 17.1(b) states that "disbursement must occur pursuant to court restrictions which are similar to those of Section 3600 *et seq.*" CivLR 17.1(b).

Section 3600 *et seq.* apply when a court approves a compromise of a pending action involving a minor's disputed claims that provides for the payment of money or some other benefit to the minor. Cal. Prob. Code § 3600. California Probate Code Section 3601(b) provides that a trial court approving a minor's compromise must authorize and direct the payment of reasonable expenses and an award of reasonable attorney's fees "from the

---

[1]      *See*, *e.g.*, *L.G. vs. Regents of the University of California*, 2013 WL 5944212 (unknown state court 2013) ($9,000,000); *Gonzalez v. U.S.*, 2012 WL 2361723 (E.D. Cal.) ($1,750,000); *Confidential v. Confidential*, 2013 WL 3148691 (Cal. Super. Ct.) ($9,975.000); *K.J. vs. Los Robles Regional Medical Center*, 2012 WL 89636633 (Cal. Super. Ct.) ($3,600,000); *E.T.  v. Doe*, 2010 WL 4653319 (Cal. Super. Court) ($7,500,000); *H.L. v. Doe Hospital*, 2010 WL 4307365 (Cal. Super. Ct.) ($3,000,000); *Doe vs. Roe Hospital*, 2004 WL 1969942 ($1,000,000); *Romo vs. Presbyterian*, 1999 WL 1466618 (Cal. Super. Ct.) ($0).

money or other property to be paid or delivered for the benefit of the minor." Cal. Prob. Code, § 3601(a).

When approving the amount of attorney's fees being paid as part of a minor's compromise, California Rule of Court 7.955 is instructive on factors that may be considered "in determining whether an attorney's proposed fee is reasonable." *Schulz v. Jeppesen Sanderson, Inc.*, 27 Cal. App. 5th 1167, 1174 (2018).  Relevant factors include "the terms of any representation agreement made between the attorney and the representative of the minor . . . based on the facts and circumstances existing at the time the agreement was made; the amount involved; the results obtained; the experience and ability of the attorney performing the legal services; the time and labor required; and whether the fee is fixed, hourly, or contingent.  (Cal. Rules of Court, rule 7.955.)

Here, a total of $250,000 of the $1,000,000 proposed Settlement has been allocated to the payment of attorneys' fees for plaintiffs' counsel.  [Doc. No. 35, at p. 5.]  Plaintiffs' counsel submitted a comprehensive Declaration in support of this allocation, as well as copies of the fee agreements executed by plaintiffs in 2019, before the lawsuit was filed on July 31, 2020, and again in 2021 when plaintiffs' counsel left a law firm to begin his own law practice.  [Doc. Nos. 35-8; 35-9; 35-10.]  The fee agreements show that plaintiffs' counsel was retained on a contingency fee basis under a written agreement providing for fees of "25% of all amounts received by way of any compromise settlement" paid by the United States, which is the maximum set forth in 28 U.S.C. § 2678 of the FTCA.  [Doc. No. 35-8, at p. 1; Doc. No. 35-9, at p. 1.]  As to the portion of any settlement paid for medical negligence of a non-federal health care provider, a different fee structure applies based on the maximum set by California Business and Professions Code Section 6146, and this fee structure is relatively consistent with the maximum set under 28 U.S.C. § 2678. [Doc. No. 35-8, at p. 1; Doc. No. 35-9, at p. 1.]  Given the circumstances and the applicable law, the Court finds these contingency fee agreements to be reasonable.

This case has been pending since the Complaint was filed more than two years ago on July 31, 2020.  [Doc. No. 1.]  The record before the Court indicates that plaintiffs'

counsel, who has practiced law for 14 years and is experienced in personal injury and medical malpractice litigation, effectively litigated the case for his clients. [Doc. No. 35-10, at p. 2.]   Counsel's Declaration represents that he spent "thousands of hours" investigating and litigating the case, which included reviewing and exchanging "tens of thousands" of medical records; responding to written discovery requests; taking depositions; preparing his clients to be questioned at their depositions; defending his clients' depositions; retaining and working with expert witnesses; preparing his clients to undergo evaluations by defendants' experts; and negotiating a favorable settlement before the expenditure of large amounts of litigation and expert costs. [Doc. No. 35-10, at pp. 3-4.]  Under these circumstances, the Court finds the requested attorneys' fees to be fair and reasonable.

Plaintiffs' counsel also seeks reimbursement of $41,880.36 for costs incurred in the litigation.  These costs include, *inter alia*, court reporting services and preparation of the documents for the proposed Trust. [Doc. No. 35, at p. 9 (Exhibit 11).]  Considering the history of the litigation and the significant discovery completed by the parties, the Court finds that the costs incurred by plaintiffs' counsel are reasonable and fair under the circumstances. *See Hernandez v. United States*, No. 3:19-cv-1457-AHG, 2020 WL 6044079, at 5 (S.D. Cal. Oct. 13, 2020) (finding expenses reasonable where parties settled three months before the pretrial conference and after seven months of discovery).

## C.   *The Settlement Preservation Trust*.

### 1.   *Consent to Jurisdiction*.

If money from a settlement is to be held in trust for a minor, Local Rule 17.1(b)(3) provides that "the proposed trust instrument must be submitted to a magistrate judge . . . for review and approval. . . ." CivLR 17.1(b)(3).  "Where the parties consent to magistrate judge jurisdiction to approve the entire settlement, the approval of the trust documents and the settlement may be consolidated in one properly noticed [petition or] hearing."  CivLR 17.1(b)(3).  Here, the parties have consented to the undersigned Magistrate Judge to approve the entire settlement and the trust documents.  [Doc. No. 41.]

2.      *The Terms of the Trust*.

Civil Local Rule 17.1(b)(4)(b) indicates that the Court's approval order must "fully" sets forth the terms of the proposed Trust "not as an attachment."  CivLR 17.1(b)(4)(b). Accordingly, the terms of the proposed Trust, as modified, are fully set forth below:

### L.C.C. 2022 SETTLEMENT TRUST

THIS IS A TRUST AGREEMENT established this _____ day of _____, 2022 by CHRISTOPHER CALIHAN and LINDSAY CALIHAN, Parents of L.C.C., as Settlors (collectively referred to as "Settlor") and CAPITAL FIRST TRUST COMPANY (sometimes referred to as "Corporate Trustee") and LINDSAY CALIHAN (sometimes referred to as "Individual Trustee"), as Trustees (collectively referred to as "Trustees").

WHEREAS, This Trust is established for the benefit of L.C.C. (hereinafter called "Beneficiary" or "L.C.C."). L.C.C.'S date of birth is September 24, 2017.  L.C.C. is a minor and it is expected that L.C.C. will have capacity at the age of majority;

WHEREAS, the Trustees are willing to accept the Trust hereby created and covenants to discharge faithfully the duties of Trustees hereunder;

NOW, THEREFORE, in consideration of the premises and of the mutual covenants herein contained, it is agreed as follows:

SECTION 1. IDENTIFICATION

1.1     NAME OF TRUST:   The name of this Trust is the L.C.C. 2022 SETTLEMENT TRUST under agreement dated _____, 2022.

1.2     TRUST FUNDING

1.2.1    Initial Trust Funding:   This Trust shall be funded initially with the assets described in Schedule "A" attached hereto and made a part hereof. Any property acquired by the Trust must be titled solely in the name of the Trust. All of such property, including additions pursuant to Paragraph 1.4.2 below and income earned in the Trust, is hereinafter referred to collectively as the "Trust Estate."

1.2.2    Additions to Trust:   Other property, real or personal, may be transferred to the Corporate Trustee and/or the Individual Trustee with the consent of the Corporate Trustee and/or the Individual Trustee. Any property acquired by the Trust must be titled solely in the name of the Trust.

SECTION 2. DISTRIBUTION OF INCOME AND PRINCIPAL

2.1     DISTRIBUTIONS DURING BENEFICIARY'S LIFETIME: During L.C.C.'S lifetime, the Trustees may, in their sole, absolute and unfettered discretion, pay to L.C.C. or apply for his benefit so much of the

Trust Estate as the Trustees may at any time and from time to time determine, for any purpose, including education, which the Trustees deem appropriate to meet the needs of L.C.C. and promote his well-being, comfort and standard of living.  The Trust Estate shall not be distributed to or for the benefit of anyone other than L.C.C. Any net income not so distributed shall be accumulated and annually added to principal.

2.2     WITHDRAWAL RIGHTS:     Upon L.C.C. attaining eighteen (18) years of age, he shall have the unrestricted right for ninety (90) days to withdraw any part or all of the Trust Estate.  The Trustees shall notify L.C.C. of this right in writing within thirty (30) days after the Beneficiary attains eighteen (18) of age.  If L.C.C. does not exercise this right, the property not withdrawn shall continue to be held by the Trustees and disposed of under this section until L.C.C. attains thirty (30) years of age.

2.3     DISTRIBUTIONS ON DEATH

2.3.1     Assistance to Beneficiary's Estate

a.     Specific Bequests, Funeral and Administration Expenses:  To the extent that L.C.C.'S probate estate is insufficient to satisfy all specific bequests under L.C.C.'S Will; the expenses of L.C.C.'S last illness, funeral and burial; legally enforceable claims against him or his estate; any estate, inheritance or other death taxes, including any interest and penalties with respect to those taxes not caused by negligent delay, payable to any federal, state or foreign taxing authority; any statutory or Court ordered allowances for qualifying family members; and the costs and expenses of administration of L.C.C.'S estate, the Trustees are authorized, in their sole and absolute discretion, to use assets from L.C.C.'S residuary Trust Estate for such purposes either directly by making such payments or by paying such amounts to his Executor.

b.     Indemnity:  The Trustees shall be indemnified by the estate for any damages as a result of exercising, in good faith, the authority granted to the Trustees under this Section.

2.3.2     Power of Appointment:   Thereafter, the Trustees shall distribute the remaining Trust Estate to such persons, in such amounts, and upon such terms, Trusts and conditions as L.C.C. shall appoint under the terms of his Last Will and Testament, and offered for probate within six (6) months of his death, making specific reference to this power.

2.3.3     Failure to Exercise Power of Appointment:   If L.C.C. has not validly exercised this power to appoint by Will, the remaining Trust Estate, if any, shall be distributed to the legal representative of L.C.C.'S estate.

2.4     LIMITATIONS:     Notwithstanding any of the powers conferred upon the Individual Trustee, the Individual Trustee shall not exercise or join in the exercise of discretionary powers over income, principal,

or termination of the Trust (1) for her own benefit, or (2) to discharge her legal obligation to support L.C.C.

SECTION 3. FIDUCIARY PROVISIONS

3.1     TRUSTEE POWERS:   The interpretation and operation of the Trust shall be governed by the laws of the State of New York.  The Trustees may, without prior authority from any Court, exercise all powers conferred by this Trust Agreement or by common law or by any fiduciary powers act or other statute of the State of New York or any other jurisdiction whose law applies to the Trust.  The Trustees shall have sole and absolute discretion in exercising these powers.  In addition to the powers herein provided and those given by law, the Trustees, without any order of the Court and in the Trustees' sole and absolute discretion, shall have the following additional powers:

3.1.1     Retain Property:  To retain any property transferred to this Trust, and to make such investments and reinvestments and in such proportions, without limitation to what are known as legal investments, as the Trustees shall consider beneficial.

3.1.2     Dispose of Property:   To sell at public or private sale, exchange for like or unlike property, convey, lease for terms longer or shorter than the Trust, and otherwise dispose of any or all property held hereunder, for such price and upon such terms and credits as it deems proper.

3.1.3     Securities:   To (1) participate in any merger or reorganization affecting securities held hereunder at any time; (2) deposit stock under voting agreements; (3) exercise any option to subscribe for stocks, bonds or debentures; (4) grant proxies, discretionary or otherwise, to vote shares of stock.

3.1.4     Investments:   To invest in any kind of property, real, personal, or mixed investments, regardless of the laws governing investments by fiduciaries, without any duty to diversify investments.

3.1.5     Entities:   To invest in any closely held company, limited-liability company, or partnership, or in any successor entity, and to purchase additional interests in any such entity, even though, as a result, such Trust is invested largely or entirely in such entity.

3.1.6     Stocks and Bonds:   To participate in any plan or proceeding, including any voting Trust plan for liquidating, protecting, or enforcing any interest in any property, or for reorganizing, consolidating, merging, or adjusting the finances of any corporation issuing any such interest; to accept in lieu thereof any new or substituted stocks, bonds, notes, or securities, whether of the same or a different kind or class, or with different priorities, rights, or privileges; to pay any assessment or any expense incident

thereto; and to do any other act or thing that it deems necessary or advisable in connection therewith.

3.1.7    Mutual Funds:   Invest in mutual funds.

3.1.8    Depository Trust Company:   To deposit, or arrange for the deposit of, securities at Depository Trust Company (DTC) and/or at any other securities depository or clearing corporation.

3.1.9    Voting:   To vote directly or by proxy at any election or stockholders' meeting any share of stock.

3.1.10    Distribution Cash or In-Kind:   To make any division or distribution in cash or in kind, or partly in cash and partly in kind; to make reasonable valuations of the property so divided or distributed; and to elect to recognize taxable gain or loss resulting from a distribution. The Trustees may consider the income tax basis of the property then available for division or distribution, as well as the circumstances of the Beneficiary, including Remainder Beneficiaries, and need not make division or distribution on a pro rata, asset-by-asset basis. The Trustee shall not adjust the interest of any Beneficiary, including Remainder Beneficiaries, as a result of any action taken or forborne under the provisions of this section.

3.1.11    Loans:   To borrow money, extend loans, pledge assets and provide guarantees for any purpose connected with the protection, preservation or improvement of the Trust Estate whenever in its judgment advisable, and as security to pledge any real or personal property forming a part of the Trust Estate upon such terms and conditions as it may deem advisable.

3.1.12    Claims:   To litigate, submit to arbitration, compromise, or settle any claim in favor of or against any Trust hereunder, and to execute all agreements, deeds, and releases necessary or proper in connection therewith.

3.1.13    Advisors:   To retain attorneys-at-law, accountants, investment counsel, case managers, consultants, agents, and other advisors and to pay them reasonable compensation out of income or principal at the Trustees' discretion, without diminution of the Trustees' compensation.

3.1.14    Taxes:   To pay the taxes and expenses of maintaining, repairing, improving, and insuring any real property held hereunder.

3.1.15    Real Estate:   To manage, operate, or repair, real estate or other property, and to lease real estate and other property upon such terms and for such period as Trustees deem advisable.

3.1.16    Residence:     The Trustees may acquire, hold, and maintain any residence (whether held as real property, condominium or cooperative apartment) for investment or for the use and benefit of L.C.C. as the Trustees, in the exercise of their sole and absolute discretion, shall

determine. If the Trustees shall determine that it would be in the best interest of L.C.C. to maintain a residence for his use, but that the residence owned by Trust should not be used for such purpose, the Trustees shall be authorized to sell said residence and to apply all or any part of the net proceeds of sale to the purchase of such other residence or residences or to make such other arrangements as the Trustees, in the exercise of its sole and absolute discretion, shall deem suitable for the purposes. Any proceeds of sale not needed for reinvestment in a residence as provided above are to be added to the principal of the Trust and thereafter held, administered, and disposed of as a part thereof. The Trustees may use the proceeds to pay all carrying charges of such residence, including but not limited to any taxes, assessments, and maintenance thereon, and all expenses of the repair and operation thereof, including the employment of domestic servants and other expenses incident to the maintenance of a household for the benefit of L.C.C., to expend such amounts as the Trustees, in the exercise of sole and absolute discretion, shall determine. This paragraph shall be construed to authorize the Trustees to purchase an existing home and modify it, purchase land and construct a home, or make necessary structural changes to any existing real estate in which L.C.C. resides.

       3.1.17   Modifications:  To make necessary modifications to real property not owned by the Trust to accommodate the needs of Beneficiary.

       3.1.18   Vehicle:  To purchase a vehicle for transporting L.C.C.

       3.1.19   Prepaid Burial:  To arrange and pay for a prepaid burial including the purchase of a cemetery plot and all funeral arrangements including normal funeral service and casket.

       3.1.20   Purchase Medical Insurance:  The Trustees are authorized to pay for private medical insurance for the benefit of L.C.C. including, but not being limited to, medical insurance provided under the Affordable Care Act.

       3.1.21   Collect Life Insurance:  To receipt for the proceeds of any life insurance made payable to the Trustees, to institute any suit or proceedings, and to take any action necessary to collect such proceeds. However, the Trustees need not institute any suit or proceeding unless its expenses, including counsel fees and costs, are available in the Trust fund or are advanced or guaranteed in an amount and in a manner reasonably satisfactory to it.

       3.1.22   Environmental:  To (i) conduct environmental assessments, audits, and site monitoring to determine compliance with any environmental law or regulation; (ii) take all appropriate remedial action to contain, cleanup or remove any environmental hazard including a spill,

release, discharge or contamination, either on its own accord or in response to an actual or threatened violation of any environmental law or regulation; (iii) institute legal proceedings concerning environmental hazards or contest or settle legal proceedings brought by any local, state, or federal agency concerned with environmental compliance, or by a private litigant; (iv) comply with any local, state or federal agency order or court order directing an assessment, abatement or cleanup of any environmental hazards; and (v) employ agents, consultants and legal counsel to assist or perform the above undertakings or actions. Any expenses incurred by the Trustees under this section shall be paid from the Trust.  Regardless of whether the Trustees exercises this power, the Trustees shall not be liable for any loss or depreciation in value sustained by the Trust as a result of the Trustees retaining any property upon which there is later discovered to be hazardous materials or substances requiring Remedial action pursuant to any federal, state, or local environmental law, unless the Trustees contributed to the loss or depreciation in value through willful misconduct or gross negligence.

   3.1.23 Renounce Property:  To renounce, in whole or in part, any property or interest in property which may become payable to any Trust hereunder, except to the extent that the distribution of such property resulting from such renunciation is fundamentally inconsistent with the provisions of this agreement.

   3.1.24 Capital Gains:  To consider gains from the sale of capital assets in the Trust to be part of a mandatory or discretionary distribution of principal to a Beneficiary.

   3.1.25 Allocation of Expenses: Except as otherwise provided, to determine whether receipts and disbursements, including its commissions, are allocable or chargeable to income or principal.

   3.1.26 Accounts:  To settle its accounts judicially or nonjudicially at any time and from time to time and to pay all of its reasonable counsel fees and costs associated therewith from the Trust without diminution of compensation otherwise payable to the Trustees.

   3.1.27 Separate Trusts:  To divide any Trust hereunder into separate trusts if the purposes for which the Trust was created are better served thereby.

   3.1.28 Post-Termination:  Exercise all power, authority, and discretion given by this Trust, after termination of any Trust created herein, until the same is fully distributed.

   3.1.30 Release of Powers:  The Corporate Trustee may release, in whole or in part, temporarily or irrevocably, any power, authority, or discretion conferred by this instrument by a writing delivered to the Individual Trustee and to the Beneficiary then eligible to receive income distributions

from any Trust. Such renunciation or release shall not affect the grant of power, authority, or discretion to the Individual Trustee then acting.

3.1.31    Administration Expenses:   The reasonable costs and expenses of administering the Trust including the retention of legal and professional assistance shall be paid first out of the Trust's income and then out of principal.

3.2.    DUTIES AND OBLIGATIONS OF EACH TRUSTEE: Notwithstanding anything to the contrary and not by way of limitation, the Trustees shall each be responsible for the following:

3.2.1 The Individual Trustee shall be responsible for knowing the day-to-day needs of the Beneficiary, and shall have the authority to make decisions related to, but not limited to, the Beneficiary's education, health care, travel and residence, provided, however, that the Individual Trustee shall not exercise or join in the exercise of discretionary powers which would discharge her legal obligation to support L.C.C.

3.2.2    The Corporate Trustee shall be responsible for all investments, tax preparation and filing on behalf of the Trust, and accountings, if any.

3.3    RESOLUTION OF DISPUTES: If there is a disagreement between the Individual Trustee and Corporate Trustee, the decision of the Individual Trustee shall control except on investment, tax and accounting decisions and on matters as to which the Individual Trustee is precluded from acting by this Trust or by law, including on matters where the Individual Trustee cannot discharge her legal obligation to support L.C.C.

3.4    POWER OF TRUSTEE TO DELEGATE:  The Trustees shall have the power to employ and/or to delegate any of its discretionary and nondiscretionary powers to each other, agents (including any corporation, partnership or other entity affiliated with the Trustees) including, but not limited to, attorneys, investment advisers, appraisers, or accountants, as it deems appropriate and to pay for such services from the Trust Estate.

3.5    RESIGNATION OF TRUSTEE:  The Individual Trustee or the Corporate Trustee shall have the right to resign at any time during the lifetime of Beneficiary by giving written notice to the Beneficiary, Co-Trustee and Trust Protector.

3.6    SUCCESSOR TRUSTEE:   If the Individual Trustee or the Corporate Trustee resigns for any reason, ceases or becomes unable to act hereunder before termination of this Trust, a successor shall be appointed by the Trust Protector. Reasonably related accounting expenses, including preparation costs, shall be paid from the Trust.

3.7    COMPENSATION:    The Trustees shall be entitled to compensation for services rendered hereunder as shall be allowed from time

to time by the laws of the State of New York, provided, however, that the Trustees may waive compensation.   In addition, the Trustees shall be reimbursed for all reasonable expenses incurred in the management and protection of the Trust Estate.   The Corporate Trustee shall be entitled to compensation for its services in accordance with its standard schedule of charges currently in effect at the time its services are called upon and from time to time during the period over which such services are performed.

3.8   TRUST PROTECTOR

3.8.1   Appointment of Trust Protector:  CHRISTOPHER CALIHAN is appointed as Trust Protector.

3.8.2   Compensation of Trust Protector:  The Individual Trust Protector shall serve without compensation for services rendered but shall be entitled to reimbursement for all reasonable expenses.

3.8.3   Powers of Trust Protector:   The Trust Protector is authorized, in the exercise of the Trust Protector's sole and absolute discretion the following powers:

a.   Removal of Corporate Trustee:   Trust Protector, by a written instrument, or L.C.C., if over age eighteen (18) and sui juris, by written instrument, may remove from office any Corporate Trustee of the Trust for any reason whatsoever, and shall replace such Corporate Trustee with another Corporate Trustee who is not related to or subordinate to L.C.C. (within the meaning of Internal Revenue Code (Code) § 672(c) to act in place of the Corporate Trustee so removed. Any successor Corporate Trustee shall be a bank, trust company, or non-profit disability organization that either (i) has at least $50,000,000 in trust assets in their management, or (ii) is obligated by law or obligates itself to post and maintain a fidelity or fiduciary bond sufficient to insure fully the value of the Trust Estate at the expense of the successor Corporate Trustee. Any Corporate Trustee so removed shall transfer the Trust assets to the new Corporate Trustee within 90 days and shall furnish a final accounting within one hundred twenty (120) days of receipt of written notice of removal. Any Corporate Trustee so removed may retain ten percent (10%) of the liquid assets of the Trust until the final accounting is prepared and approved.

b.   Designation of Successor Trustee:   To designate a successor Corporate Trustee to replace the removed Corporate Trustee as provided in the subsection herein titled "Removal of Corporate Trustee" of this Trust.

c.   Limited Power to Amend:  The power to modify or amend the Trust to reflect tax or other legal changes that affect Trust administration and/or tax status of the Trust; to correct ambiguities that might

otherwise require court construction; and to correct drafting errors that defeats the intent of the Trust.

          d.    Exercise of Trust Protector's Powers:  Any action taken pursuant to this section shall be evidenced by an acknowledged, written instrument, delivered to the Trustee and Corporate Trustee so removed and/or appointed, as the case may be, and in the case of an appointment shall be effective upon acceptance thereof by execution of an acknowledged, written instrument by the Corporate Trustee so appointed.

      3.8.4    Resignation of Trust Protector

          a.    Right of Trust Protector to Resign:  Any Trust Protector shall have the right to resign, by duly acknowledged written instrument delivered to the adults who would be entitled to share in the principal of the Trust if it were then to terminate.

          b.    Power of Successor Trust Protector:  Any successor Trust Protector shall have the rights, powers, privileges, discretions, and duties conferred upon or vested in Trust Protector by the provisions of this Agreement.

          c.    Nomination of Successor Trust Protector:  If a vacancy occurs in the office of Trust Protector and there is no Successor Trust Protector able to serve, the law firm of Littman Krooks LLP, or its successor, shall have the right, power, and authority to designate a successor Trust Protector.

      3.8.5    Bond-Waived —Neither the original Trust Protector nor any Successor Trust Protector shall be required to give bond or furnish sureties in any jurisdiction.

      3.8.6    Restriction:  L.C.C. shall not serve as Trust Protector.

      3.8.7  No Fiduciary Responsibility:  No fiduciary responsibility is imposed on the Trust Protector to monitor the actions of the Trustees. Except for any matter involving the Trust Protector's own individual willful misconduct or negligence proved by clear and convincing evidence, no Trust Protector shall incur any liability by reason of any error of judgment, mistake of law, or action of any kind taken or omitted to be taken hereunder if in good faith it is reasonably believed by such Trust Protector to be in accordance with the provisions and intent hereof. The Trust Protector shall not be liable for failure to remove the Individual Trustee or the Corporate Trustee even if such Trustee or Corporate Trustee may be guilty of a gross violation of his or her fiduciary duties hereunder.

## SECTION 4. TAX AND ADMINISTRATIVE PROVISIONS

    4.1    DEATH TAX CLAUSE:  All estate, inheritance, and other death taxes, including any interest and penalties with respect to those taxes not

caused by negligent delay, payable to any federal, state, or foreign taxing authority imposed with respect to all property comprising the gross estate, whether or not such property passes under this Trust, shall be paid out of the principal of the residuary Trust Estate.

4.2   INCOME TAX

4.2.1   Grantor Trust:   This Trust shall be construed as a "Grantor Trust" under Internal Revenue Code Section 675(4) and for tax purposes L.C.C. shall be considered the Grantor. During L.C.C.'S life, CHRISTOPHER CALIHAN shall have the right exercisable only in a nonfiduciary capacity and without the consent or approval of any person acting in a fiduciary capacity, to acquire any property held in the Trust by substituting other property of equivalent value. If CHRISTOPHER CALIHAN is unable to exercise this power because of death or disability, it shall be exercisable by LINDSAY CALIHAN.

4.2.2   Tax Liability —The Trustees may pay any income tax liability of L.C.C.

4.3   SPENDTHRIFT PROVISION:   All principal and income shall, until actual distribution, be free of debts, contracts, alienations, and anticipations of L.C.C. and Remainder Beneficiary(ies), and the same shall not be liable to any levy, attachment, execution, or sequestration while in the possession of the Trustees. This provision is not intended to limit the right of any state providing medical assistance to L.C.C. to reimbursement of incorrectly paid benefits.

4.4   DISABILITY PROVISION: Notwithstanding any provision hereunder to the contrary, if any Remainder Beneficiary hereunder who receives the Trust Estate upon the death of the Beneficiary, shall become or is disabled or incapacitated, institutionalized and/or shall be or is receiving nursing or other care "in home" or on an out-patient basis, thereby entitling the Remainder Beneficiary to public benefits such as Medicaid or Supplemental Security Income ("SSI"), the share to which such Remainder Beneficiary is entitled shall be distributed to the Trustees for the Remainder Beneficiary's benefit in accordance with EPTL § 7-1.12 and the powers and provisions of this Trust shall apply thereto.  Any rights such Remainder Beneficiary may have to receive distributions of income and/or principal from any Trust created under this Trust, may only be exercised by the Trustees. The Trustees' discretion as to the need, propriety or amount of distributions for principal and/or income to or for the use and benefit of the Remainder Beneficiary shall be limited solely to providing only those comforts and luxuries not otherwise provided by such institution and/or any such health care professionals and/or organizations, under any publicly-funded program or from other sources (public or private), and then only in the Trustees' sole and

20cv1489-KSC

absolute discretion.   Under no circumstances shall the Trustees exercise discretion to utilize funds for the payment of such services that would otherwise be borne by any publicly funded program or by the institution.

4.5    OPTIONAL TERMINATION OF TRUST: There is a possibility that the Trust may become of such a small size as to be impractical to be administered by the Corporate Trustee. The Trustees may terminate the Trust if in the judgment of the Trustees the principal is so small that it would be inadvisable to continue to hold it in Trust. If the Trust is terminated under this provision, the remaining funds shall be paid to L.C.C. or his then acting Legal Guardian.

4.6    NON-ACCRUAL OF INCOME:   All income not actually paid to the Beneficiary before termination of his or her interest shall be treated as though it had accrued and become payable thereafter, and no credit or accrual shall be made for taxes, commissions or other charges theretofore made against income. Income shall be apportioned between successive Beneficiaries.

4.7    RULE AGAINST PERPETUITIES:   If the Trust is sitused in a jurisdiction which causes the Trust to be subject to a Rule Against Perpetuities, then notwithstanding anything herein to the contrary, the Trust shall not extend beyond twenty-one (21) years after the death of the last survivor of L.C.C. and his descendants living at the date of L.C.C.'S death. At the expiration of that period, the Trustees shall distribute the remaining portion of the Trust Estate in the Trustees' hands to the Beneficiaries entitled to the income at that time.

4.8    IRREVOCABILITY:  The Trust is irrevocable.

4.9    NO BOND:   The Trustees shall not be required to post bond or furnish surety in this or any other jurisdiction and no notice of bonding is required.

4.10    SITUS

4.10.1    Situs and Governing Law:  This Agreement has been executed, delivered and accepted in the State of New York. This Agreement and the Trust created pursuant hereto shall be governed, construed and administered according to the laws of the State of New York. The situs of this Trust shall be the State of New York.

4.10.2    Changing the Trust Situs:   Notwithstanding the foregoing provisions of this section, if at any time, in the opinion of the Trustees, it is in the best interests of the Beneficiary for the situs of the Trust to be located in a jurisdiction other than the one in which the Trust is administered at the time, the Trustees may remove the Trust situs (and to the extent necessary or appropriate, the Trust assets) to such other jurisdiction.

The Trustees may elect that the law of such other jurisdiction shall govern the Trust to the extent necessary or appropriate under the circumstances.

4.11    DEFINITIONS

4.11.1    Code and Regulations:    References to the "Internal Revenue Code" or "Code" or to provisions thereof are to the Internal Revenue Code of 1986, as amended at the time in question.    References to the "Regulations" and "Regs." are to the Regulations under the Code.  If, by the time in question, a particular provision of the Code has been renumbered, or the Code has been superseded by a subsequent Federal tax law, the reference shall be deemed to be to the renumbered provision or the corresponding provision of the subsequent law, unless to do so would clearly be contrary to the intent of this Trust.  A similar rule shall apply to references to the Regulations.

4.11.2   Education:    As used in this Trust, "education" shall include, but is not limited to:

a.    Private Tutoring:    Any private tutor at grade school, college, vocational, postsecondary or graduate school.

b.    Special Education: Any course of study or instruction at any institution for persons with special needs, disabilities, or mental, physical or psychological impairments.

c.   College:  Any course of study or instruction at an accredited college or university granting undergraduate or graduate degrees.

d.    Vocational:    Any course of study or instruction at any institution for specialized, vocational, or professional training.

e.    General:    Any curriculum offered by any institution that is recognized for purposes of receiving financial assistance from any state or federal agency or program.

f.    Course of Study:    Any course of study or instruction which may be useful in preparing the Beneficiary for any vocation consistent with the Beneficiary's abilities and interests.

g.    Types of Distributions:    Distributions for education may include tuition fees, books, supplies, living expenses, travel, and spending money to the extent such education expenses are reasonable.

4.12.  SAVINGS CLAUSE:  Should any of the provisions or directions of this Agreement fail or be held ineffectual or invalid for any reason, no other portion or provision of this Agreement shall be invalidated, impaired or affected thereby, but that this Agreement be construed as if such invalid provision or direction had not been contained therein.

4.13 COUNTERPARTS:    This Agreement may be executed simultaneously or in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same

instrument, and any party hereto may execute this Agreement by signing any such counterpart.

IN WITNESS WHEREOF CHRISTOPHER CALIHAN and LINDSAY CALIHAN, as Settlors, and CAPITAL FIRST TRUST COMPANY and LINDSAY CALIHAN, as Co-Trustees, have signed this Trust Agreement, effective the day and year first above written and executed by us, as Settlor and Trustees on the dates set forth below.

The Settlors certify that they have read this Trust Agreement, that they understand it, and that it correctly states the provisions under which the Trust Estate is to be administered and distributed by the Trustees.  The Settlors hereby sign this Trust Agreement in the presence of the notary.

The Trustees hereby expressly accept the transfer and assignment of assets and agrees to assume the Trust hereby created and to carry out the provisions hereof.

## 3.  _Compliance with Local Rules and California Law._

Local Rule 17.1(b)(4) provides as follows:  "Any withdrawals or disbursements from the trust must be made in accordance with the procedures and applicable laws of the state." CivLR 17.1(b)(4).  In this regard, California Probate Code Section 3611(g) provides that a court approving a minor's compromise may order that the remaining balance "be paid or delivered to the trustee of a trust which is created by, or approved of, in the order or judgment referred to in Section 3600. This trust shall be revocable by the minor upon attaining the age of 18 years, and shall contain other terms and conditions, including, but not limited to, terms and conditions concerning trustee's accounts and trustee's bond, as the court determines to be necessary to protect the minor's interests."  Cal. Prob. Code § 3611(g).

As outlined above, plaintiffs' Petition seeks an order approving the allocation of $588,503.47 to the Trust.  [Doc. No. 35, at p. 12; Doc. No. 36, at p. 3.]  Plaintiffs represent that they now reside in New York.  Therefore, plaintiffs have retained an attorney licensed to practice in New York to set up the proposed Trust there.  [Doc. No. 35, at p. 6.]  The Court also notes that Section 3.1 of the proposed Trust provides as follows:  "The

/ / /

interpretation and operation of the Trust shall be governed by the laws of the State of New York. . . ."  [Doc. No. 35-6, at p. 2.]

Plaintiffs have also selected a corporate trustee, James Creel of Capital First Trust Company.  L.C.C.'s mother, Lindsay Calihan, who is one of the guardians *ad litem* in this case, will serve as the co-trustee.  Neither trustee will have the power to act unilaterally.  [Doc. No. 35, at p. 6.]  The proposed Trust is not reversionary, and it is not a special needs trust or a medical trust, so it is not restricted to medical procedures.  Rather, the proposed Trust may be "used broadly for the benefit of L.C.C."  [Doc. No. 35, at p. 6.]  As required by California Probate Code Section 3611, the proposed Trust is revocable by L.C.C. when he is eighteen (18) years old.

Local Rule 17.1(b)(4)(a)(4) and (b)(4)(b)(1) indicate the Court may require an "appropriate bond" when approving the disbursement of funds from a settlement into a trust as part of a minor's compromise.  CivilLR 17.1(b)(4).  Here, the proposed Trust states that no bond is required.  [Doc. No. 35-6, at p. 8.]  In their Petition, plaintiffs request that the Court waive any bond requirement, because they have selected and named a professional, corporate trustee as one of two co-trustees who will administer the proposed Trust.  [Doc. No. 35, at pp. 6-7.]  The Court agrees with plaintiffs that a bond is not necessary to protect the interests of the minor.  As represented, the proposed Trust names a corporate trustee as one of two co-trustees who will administer the Trust, and neither the corporate trustee nor the co-trustee has the power to act unilaterally.

Local Rule 17.1(b)(4)(2) indicates that an order approving a trust in the context of a minor's compromise may require that a "first accounting" be filed in the San Diego Superior Court "within one year of the establishment of the trust."  CivilLR 17.1(b)(4)(2).  However, Local Rule 17.1(b)(4)(2) also states as follows:  "If the recipient of the money or property is not a California resident, the accounting must be made to the appropriate court in the jurisdiction where the minor . . . resides."  CivilLR 17.1(b)(4)(2).  In this case, Section 3.1.26 of the proposed Trust empowers the Trustee:  "To settle its accounts judicially or nonjudicially at any time and from time to time and to pay all of its counsel

fees and costs associated therewith from the trust without diminution of compensation otherwise payable to the Trustee."  [Doc. No. 35-6, at p. 6.]  Since the proposed Trust will be set up and administered in New York and will be governed by New York law, the Court finds that the filing of a "first accounting" is unnecessary unless it is required under New York law.

Based on the foregoing, the Court finds that the terms and conditions of the proposed Trust, as outlined above, are sufficient to protect the interests of the minor, L.C.C., and must be approved.

### *Conclusion*

Having been fully informed of the facts and circumstances of the case, the specific terms and conditions of the settlement reached between the parties, and the proposed allocation of the settlement amount, the Court finds that the proposed Settlement and the proposed Trust are fair and reasonable and in L.C.C.'s best interests.  Accordingly, IT IS HEREBY ORDERED THAT plaintiffs' *Ex Parte* Petition for Approval of the Minor's Compromise and Approval of the Minor's Trust is GRANTED.  [Doc. Nos. 35, 36.]

IT IS FURTHER ORDERED that:

1.     The Court approves the terms and conditions of the Settlement Agreement and Release of Claims between the United States of America and L.C.C., a minor, by and through his Guardians *Ad Litem*, Lindsay Calihan and Christopher Calihan.  [Doc. No. 35-3].

2.     The Court approves the terms and conditions of the Settlement and Release between Scripps Health, dba Scripps Mercy Hospital San Diego and L.C.C. a minor, by and through his Guardians Ad Litem, Lindsay Calihan and Christopher Calihan.  [Doc. No. 35-4].

3.     The Court approves the terms of the Settlement Preservation Trust as recited in this Order.

4.     Lindsay Calihan and Christopher Calihan, as parents and Guardians *Ad Litem* of L.C.C., a minor, are authorized to execute any documents necessary to complete

and perfect the Settlement and to provide information and documentation necessary to establish the Settlement Preservation Trust.

5.      The Court makes no specific finding or order with respect to whether the Settlement Preservation Trust satisfies or complies with applicable state or federal laws or regulations.

6.      No bond is required because the Trust will be managed by a professional Trustee.

6.      The Court approves the allocation and payment of the final Medi-Cal lien in the amount of $49,616.17, as presented in the Addendum to plaintiffs' *Ex Parte* Petition for Approval of the Minor's Compromise and for Approval of the Minor's Trust.  [Doc. Nos. 36 and 36-1.]

7.      The Courts approves the allocation of $588,503.47 to L.C.C., as amended based on the final amount of the Medi-Cal lien presented by plaintiffs in the Addendum to the *Ex Parte* Petition for Approval of the Minor's Compromise and for Approval of the Minor's Trust.  [Doc. Nos. 36 and 36-1.]

8.      The Court approves the allocations of $35,000 to Lindsay Calihan and $35,000 to Christopher Calihan.

9.      The Court approves the payment of attorneys' fees in the amount of $250,000.00 to the law firms of Findley Law and Mulligan, Banham & Findley and finds that this amount is fair and reasonable.

10.     The Court approves reimbursement of litigation costs and expenses advanced by the law firms of Findley Law and Mulligan, Banham & Findley in the amount of $41,880.36 as set forth in Exhibit 11 and finds that these costs and expenses are fair, reasonable, and necessary.  [Doc. No. 35-11.]

11.     Plaintiffs/petitioners and their attorneys are authorized and ordered to distribute the Settlement Amount as provided in this Order.

12.     Within thirty (30) days of the date this Order is filed, plaintiffs/petitioners shall file a proposed order that (a) requests dismissal of this action in its entirety with

prejudice; (b) requires each party to bear its own costs, expenses, and fees; and (3) does not require the Court to retain jurisdiction over the settlement.

IT IS SO ORDERED.

Dated:  November 1, 2022

Hon. Karen S. Crawford
United States Magistrate Judge

20cv1489-KSC